# Illinois Official Reports

## Supreme Court

---

### *Hess v. Estate of Klamm*, 2020 IL 124649

---

| | |
|---|---|
| Caption in Supreme Court: | LORETTA HESS *et al.*, Appellees, v. THE ESTATE OF TJAY KLAMM, Deceased, *et al.* (State Auto Insurance Companies, Appellant). |
| Docket No. | 124649 |
| Filed | January 24, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Franklin County, the Hon. Erik J. Dirnbeck, Judge, presiding. |
| Judgment | Judgments reversed.<br>Cause remanded with directions. |
| Counsel on Appeal | Robert Marc Chemers and Jonathan L. Federman, of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.<br><br>Paul J. Schafer, of Winters, Brewster, Crosby and Schafer LLC, of Marion, for appellees. |

Justices                CHIEF JUSTICE BURKE delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Karmeier, Theis, and Neville concurred in the judgment and opinion.

## OPINION

¶ 1        At issue in this appeal is whether a multivehicle automobile insurance policy is ambiguous such that the liability limit for all covered vehicles may be aggregated or "stacked." The circuit court of Franklin County held that the policy was ambiguous and must be construed in favor of the injured plaintiffs to permit stacking. The appellate court affirmed, with a modification. 2019 IL App (5th) 180220. We now reverse the lower courts' judgments.

¶ 2                                                 BACKGROUND

¶ 3        On April 17, 2015, Richard Kiselewski was driving a 2001 Dodge Grand Caravan near Sesser, Illinois, with his two granddaughters, Meadow and Sierra Hess, in the backseat. A 2006 Chevrolet Cobalt driven by TJay Klamm crossed the center line and struck Kiselewski's vehicle near the intersection of Route 148 and North County Line Road. Kiselewski and Sierra were killed in the accident. Meadow survived but was severely injured. Klamm also died as a result of the accident.

¶ 4        At the time of the accident, Klamm was insured under an automobile liability policy issued to his mother, Dawn Keller, by State Auto Insurance Companies, doing business as Meridian Security Insurance Company (Meridian). The policy provides coverage for four vehicles. The liability coverage section of the policy requires the insurer to "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." An "insured" is defined, in part, as "[y]ou or any 'family member' for the ownership, maintenance, or use of any auto or 'trailer,' " or, alternatively, "[a]ny person using 'your covered auto.' "

¶ 5        The policy contains what courts commonly refer to as an "antistacking clause." This clause states:

> "LIMIT OF LIABILITY
>
> A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of 'bodily injury' sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for 'bodily injury' resulting from any one auto accident.
>
> The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all 'property damage' resulting from any one auto accident.
>
> This is the most we will pay regardless of the number of:

1. 'Insureds';

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident."

¶ 6        The declarations in the policy comprise three physical pages. Only the first two pages are relevant to this appeal. The first declarations page lists three covered vehicles: a 2002 Ford F-150 ("AUTO 1"), a 2006 Chevrolet Cobalt ("AUTO 2"), and a 2000 Ford Mustang ("AUTO 3"). Beneath the list of vehicles is the following statement: "COVERAGE IS PROVIDED WHERE A PREMIUM IS SHOWN FOR THE COVERAGE." Beneath this statement is a description of the coverage arranged into columns. The first column lists the types of coverage provided in the policy, *e.g.*, bodily injury liability, property damage liability, medical payments, auto damage, collision, transportation expenses, and towing and labor. The second column lists the limits of liability for each type of coverage. The third, fourth, and fifth columns list separate premiums for Autos 1, 2, and 3 for each type of coverage. The limits of liability for bodily injury liability coverage are listed as $100,000 per person and $300,000 per accident, next to and to the left of the premiums for Autos 1, 2, and 3. Thus, the first page of the declarations lists the bodily injury liability limit only once.

¶ 7        The second declarations page lists a fourth covered vehicle, a 2014 Kia Sportage ("AUTO 4"). Beneath this is the statement: "COVERAGE IS PROVIDED WHERE A PREMIUM IS SHOWN FOR THE COVERAGE." Beneath this statement are the same column categories as those on the first page. The columns list the types of coverage, the limits of liability, and the premiums for each type of coverage for Auto 4. The limits for bodily injury coverage are listed again as $100,000 per person and $300,000 per accident. Beneath these columns is a separate section listing a single premium in the amount of $88 for uninsured/underinsured motorists (UM/UIM) bodily injury coverage. This section provides that $100,000 per person and $300,000 per accident are the "TOTAL LIMIT [of UM/UIM coverage] FOR ALL VEHICLES COVERED UNDER THIS POLICY."

¶ 8        The administrators of Kiselewski's and Sierra Hess's estates and the guardian of Meadow Hess's estate filed a lawsuit against Klamm's estate and Meridian. Plaintiffs sought, *inter alia*, a declaratory judgment that the policy is ambiguous as to the amount of bodily injury liability coverage. They alleged that this ambiguity should be construed in their favor by aggregating or "stacking" the coverage. Meridian (hereinafter defendant) filed an answer and counterclaim for declaratory judgment. Citing the antistacking clause in the policy, Meridian contended that the policy unambiguously sets forth a maximum limit of liability in the amount of $100,000 per person and $300,000 per accident.

¶ 9        Defendant filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure. 735 ILCS 5/2-615(e) (West 2014). Plaintiffs filed a response and a cross-motion for summary judgment. A hearing was held on the motions. On the same date, defendant tendered to plaintiffs three separate checks in the amount of $100,000, as those amounts of liability coverage were not in dispute.

¶ 10        The circuit court issued a written order in favor of plaintiffs, finding that the policy, taken as a whole, was ambiguous. Construing the ambiguity in favor of plaintiffs, the court declared that defendant had a duty under the policy to aggregate the bodily injury coverage limits for all four covered vehicles. The order stated that the liability coverage shall be stacked four

times, resulting in coverage in the amount of $400,000 per person and $1.2 million per accident. Upon defendant's motion, the court entered an express written finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay an appeal. Defendant then filed its appeal.

¶ 11    The appellate court affirmed, but it modified the circuit court's judgment to order defendant to stack the coverage only two times. 2019 IL App (5th) 180220. The court reasoned that, "because the relevant bodily injury liability limits of $100,000 per person and $300,000 per accident are listed twice on the declarations pages, and the antistacking clause refers the reader to the declarations for the applicable liability limits, such limits are to be stacked twice, for total limits of $200,000 per person and $600,000 per accident." *Id.* ¶ 20.

¶ 12    This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018). Plaintiffs request cross-relief, asking this court to modify the appellate court's judgment and hold that coverage must be stacked four times.

¶ 13                                    ANALYSIS

¶ 14    The circuit court entered judgment in favor of plaintiffs on the parties' cross-motions seeking a judgment on the pleadings and summary judgment. Either a judgment on the pleadings or summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 21; *Seymour v. Collins*, 2015 IL 118432, ¶ 42. The applicable standard of review for both types of motions is *de novo*. *Hooker*, 2016 IL 121077, ¶ 21. In addition, the facts in this case are undisputed. The sole basis for the underlying judgment is the construction of an insurance policy. This is a legal question that is also subject to *de novo* review. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001).

¶ 15    Under Illinois law, "the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). The "primary objective" in interpreting an insurance policy "is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* Unambiguous policy language is applied as written unless it conflicts with public policy. *Id.*

¶ 16    In general, antistacking provisions in insurance policies are not contrary to public policy. *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 229-30 (1995). Thus, an unambiguous antistacking clause will be given effect by a reviewing court. *Hobbs*, 214 Ill. 2d at 18. If the clause is ambiguous, however, it will be construed liberally in favor of coverage and strictly against the insurer who drafted the policy. *Id.* at 17. Policy language is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.* Only reasonable constructions of the language will be considered, not "creative possibilities" suggested by the parties. See *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993) ("Reasonableness is the key."). Moreover, we " 'will not strain to find ambiguity in an insurance policy where none exists.' " *Travelers Insurance Co.*, 197 Ill. 2d at 293 (quoting *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999)).

¶ 17    On appeal to this court, defendant argues that the policy unambiguously prohibits stacking of liability limits for the four covered vehicles. Alternatively, defendant argues that this court

- 4 -

should impose a *per se* rule barring stacking of automobile liability coverage as a matter of law. We first consider whether the policy is ambiguous.

¶ 18 This court's decisions in *Bruder* and *Hobbs* guide our analysis in this case. Among the issues decided in *Bruder* was whether uninsured motorists coverage under a business vehicle policy should be stacked. *Bruder*, 156 Ill. 2d at 181. The policy at issue covered two pickup trucks used in the insured's business. *Id.* at 182. The uninsured motorists coverage in the policy was limited to $100,000 per person and $300,000 per accident. *Id.* The policy also contained an antistacking clause, which provided, in part, as follows:

> " 'The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily injury shown in the declarations for "Each Person." ' " *Id.* at 189.

The declarations page listed both pickup trucks and their separate premium amounts in columns. However, the limit of liability of $100,000 for bodily injury coverage for " 'each person' " was noted only once on the page, separate and apart from the column arrangement. *Id.* at 192-93.

¶ 19 Plaintiffs argued that the limit of liability in the business policy could reasonably be read as applying twice, once for each vehicle, resulting in $200,000 of coverage per person. *Id.* at 193. This court disagreed. We held that the declarations page was subject to only one reasonable interpretation and, therefore, the antistacking clause unambiguously precluded stacking the coverages for the two vehicles. *Id.* at 194. We explained our holding as follows:

> "Although two entries are found in the column 'PART IV BODILY INJURY' for the premiums paid for each pickup truck, there is only one corresponding amount of liability for bodily injury for each person appearing on the page. That is the $100,000 amount appearing outside and above that column. The only reasonable interpretation is that the policy provides only $100,000 of liability for bodily injury occasioned to each person insured no matter how many vehicles are listed in the column arrangement and no matter how many premiums are paid. The representation of the limit of liability for bodily injury for each person on the declarations page is consistent with the language of the antistacking provision. It is also consistent with the language in the policy that the antistacking provision would apply 'regardless of the number of covered autos.' " *Id.* at 193-94.

¶ 20 Thus, according to *Bruder*, if the liability limit is listed only once, it is reasonable to conclude that the policy provides only that amount of coverage per person, regardless of how many vehicles are listed and how many separate premiums are paid. *Id.* at 194. In *dicta*, however, this court hypothesized that "[i]t would not be difficult to find an ambiguity" if the policy listed individual liability limits for each covered vehicle. *Id.* at 192. We reasoned that, if there were a separate limit listed for each vehicle on the declarations page, there would be little to suggest that the parties intended to limit coverage to the amount provided for only one of the vehicles. *Id.* Rather, "[i]t would be more reasonable to assume that the parties intended that, in return for the two premiums, two $100,000 coverage amounts were afforded." *Id.*

¶ 21 In *Hobbs*, this court addressed the issue of stacking in the context of underinsured motorists coverage in a multivehicle policy. *Hobbs*, 214 Ill. 2d at 14. The policy in that case contained an antistacking clause with similar language to the one in *Bruder*. *Id.* at 18. The declarations page listed the types of coverage, limits of liability, and the corresponding separate premiums

for the two covered vehicles. As in *Bruder*, the declarations page presented this information in a column arrangement. *Id.* The *Hobbs* court noted other similarities with *Bruder*. In both cases, (1) the antistacking clause tied the limit of liability to the limit shown in the declarations page, (2) the declarations page listed the premiums for the two vehicles separately, (3) the declarations page listed the limit of liability only once, and (4) the policy indicated that the antistacking clause applied regardless of the number of covered vehicles. *Id.* at 21. Based on these factors, we found that the policy was unambiguous and stacking was not allowed. *Id.*

¶ 22   This court reiterated that it would not be difficult to find an ambiguity arising from a declarations page that lists the liability limits separately for each covered vehicle. *Id.* (citing *Bruder,* 156 Ill. 2d at 192). Notably, however, we held this should not be construed as "establishing a *per se* rule that an insurance policy will be deemed ambiguous as to the limits of liability anytime the limits are noted more than once on the declarations." *Id.* at 26 n.1. Rather, the question should be decided on a case-by-case basis. *Id.* Moreover, the declarations page should not be read in isolation but must be construed together with the other provisions in the policy. *Id.* at 23.

¶ 23   In this case, the antistacking clause in the policy provides, in relevant part:

> "LIMIT OF LIABILITY
>
> A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of 'bodily injury' sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for 'bodily injury' resulting from any one auto accident.
>
> * * *
>
> This is the most we will pay regardless of the number of:
>
> 1. 'Insureds';
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the auto accident."

¶ 24   This language is virtually identical to the antistacking clause in *Hobbs*. *Id.* at 18. As we have stated, the antistacking clause must be read in conjunction with the policy as a whole. The first sentence in the antistacking clause refers the reader to the declarations to find the limits of liability. The main difference between the declarations in this case and those in *Bruder* and *Hobbs* is that the limits of liability for bodily injury coverage are listed twice—once on each of the first two pages of the declarations. The first page lists the liability limits for Autos 1, 2, and 3. The second page lists the liability limits for Auto 4. Although the liability limits are technically listed twice, we find this does not create an ambiguity with respect to stacking.

¶ 25   The policy in this case does not list liability limits separately for each covered vehicle. It lists the limits once on the first page of the declarations, to the left of Autos 1, 2, and 3, and once on the second page, to the left of Auto 4. We do not believe it is reasonable to read the policy as allowing stacking of the liability coverage either four times, as the circuit court found, or two times, as the appellate court found. The only reasonable explanation for restating the

liability limits on the second page is that the information for all four vehicles could not fit on one physical page. There simply was not enough space on the first page for an additional column listing the coverages and premiums for Auto 4. When read together with the declarations, we find that the antistacking clause unambiguously prohibits stacking of bodily injury liability coverage. We thus find that the policy provides bodily injury liability coverage in the amount of $100,000 per person and $300,000 per accident, regardless of the number of claims, insureds, covered vehicles, premiums, or vehicles involved in the accident.

¶ 26 The appellate court below incorrectly compared this case to *Cherry v. Elephant Insurance Co.*, 2018 IL App (5th) 170072, and *Johnson v. Davis*, 377 Ill. App. 3d 602 (2007). Both cases allowed stacking of underinsured motorists coverage in a multivehicle policy. *Cherry*, 2018 IL App (5th) 170072, ¶¶ 20, 31; *Johnson*, 377 Ill. App. 3d at 609. In contrast to the policy in this case, however, the policies in *Cherry* and *Johnson* listed the liability limits separately for each covered vehicle. See *Cherry*, 2018 IL App (5th) 170072, ¶ 20; *Johnson*, 377 Ill. App. 3d at 609. Based on this fact, the courts concluded that a reasonable person could believe that the policy provided coverage in an amount totaling the limits listed for all covered vehicles. See *Cherry*, 2018 IL App (5th) 170072, ¶ 31 ("we find that the plaintiffs could reasonably conclude that Richard Cherry had purchased $50,000 of underinsured benefits four times, resulting in $200,000 of underinsured motorist coverage for each plaintiff"); *Johnson*, 377 Ill. App. 3d at 610 ("the circuit court's decision granting Johnson $200,000 in underinsured-motorists coverage, a figure arrived at by aggregating the $50,000 limit for underinsured-motorists coverage on each of the four vehicles carrying that coverage in Johnson's insurance policy, was correct"). As we have explained, in this case it is not reasonable to conclude from the policy provisions that the policy provided more than $100,000 in bodily injury coverage per person for any one auto accident.

¶ 27 Nevertheless, in their appellee brief, plaintiffs identify what they allege are three sources of ambiguity within the policy. First, plaintiffs argue that the mere fact that the liability limits are listed twice creates an ambiguity. In support, plaintiffs emphasize the following language in the *Hobbs* decision: "We noted, however, [in *Bruder*] that had the limit of liability for bodily injury been listed *twice* on the declarations page, '[i]t would not be difficult to find an ambiguity.' " (Emphasis added.) *Hobbs*, 214 Ill. 2d at 21 (quoting *Bruder*, 156 Ill. 2d at 192). This argument misreads *Bruder* and *Hobbs*. The word "twice" in the quotation simply refers to the two covered vehicles in the *Bruder* policy. When the quotation is read in context, it is clear that the deciding factor in both decisions was whether the liability limits were listed separately for each of the covered vehicles, not whether they were listed "twice."

¶ 28 Plaintiffs next contend that the separate premiums listed for each of the four vehicles, along with the statement, "COVERAGE IS PROVIDED WHERE A PREMIUM IS SHOWN FOR THE COVERAGE," on the declarations pages, create an ambiguity regarding the amount of coverage. This court rejected a similar argument in *Hobbs*. The plaintiff in that case argued that an ambiguity arose from the following statement on the declarations page: " 'COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE.' " *Id.* at 22. The plaintiff alleged that this statement, together with the notation " 'INCL,' " in the space for the underinsured motorist premium, could reasonably be read to allow stacking of the liability limits for the two vehicles. *Id.* This court disagreed. We held that the statement that coverage is provided where a premium is shown did not, under any reasonable reading, contradict the antistacking clause. *Id.* at 23. Rather, the statement simply

informed the policyholder which coverages were applicable to which auto. Even if the declarations page left open the question of stacking, we held that the antistacking clause eliminated any uncertainty by unambiguously prohibiting stacking. *Id.* at 23-24. For the same reasons set forth in *Hobbs*, we reject plaintiffs' argument in the instant case.

¶ 29 Finally, plaintiffs argue that the bodily injury coverage set forth in the declarations is ambiguous when compared with the "clear and concise" statement of liability limits for the UM/UIM bodily injury coverage. The second page of the declarations provides that $100,000 per person and $300,000 per accident for UM/UIM coverage is the "TOTAL LIMIT FOR ALL VEHICLES COVERED UNDER THIS POLICY." Plaintiffs argue that the policy's failure to include this statement in the liability portion of the policy indicates an intent to aggregate liability limits or, at least, creates an ambiguity as to the policy drafter's intent. We disagree. It is clear from the policy that the named insured was charged a single premium for UM/UIM coverage and that this coverage applied to all four vehicles. It is equally clear that the insured was charged separate premiums for the other types of coverage in the policy. The fact that there are not also separate limits of liability attached to each vehicle shows that the intent was not to aggregate the coverage for all four vehicles.

¶ 30 Accordingly, we hold that, when the declarations are read together with the antistacking clause, there is no ambiguity as to the amount of bodily injury liability coverage in the policy. The coverage is limited to $100,000 per person and $300,000 per accident. Because we agree with defendant that the policy is not ambiguous, we decline to consider the *per se* rule suggested by defendant.

¶ 31 CONCLUSION

¶ 32 For the foregoing reasons, we reverse the judgments of the lower courts and direct the circuit court to enter judgment for defendant. We remand the cause to the circuit court for further proceedings.

¶ 33 Judgments reversed.

¶ 34 Cause remanded with directions.