**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200490-U

Order filed October 14, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| FIRST ACCEPTANCE INSURANCE COMPANY, INC., | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0490 Circuit No. 20-CH-77 |
| | ) | |
| CHARLES STEPHENS, | ) ) | Honorable David A. Brown, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice McDade and Justice Daugherity concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err, after interpreting the provisions of an insurance policy, by granting a judgment on the pleadings in favor of First Acceptance Insurance Company, Inc.

¶ 2    Defendant, Charles Stephens, was injured after being struck by an unknown hit-and-run driver while working at a gas station in Peoria. Stephens received over $25,000 in workers' compensation benefits as a result of the accident. Stephens also submitted a claim for uninsured motorist benefits under an amended automobile insurance policy (Stephens policy) that he executed with plaintiff, First Acceptance Insurance Company, Inc. (First Acceptance). First Acceptance filed a first amended complaint for declaratory judgment. In its declaratory action,

First Acceptance requested that the trial court find it was not obligated to pay Stephens's claim due to the Stephens policy's $25,000 per person limit and the offset provision pertaining to workers' compensation benefits. The trial court granted a judgment on the pleadings in favor of First Acceptance. Stephens appeals. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On September 10, 2019, Stephens was working at a gas station in Peoria. During his shift at the gas station, Stephens was injured after being struck by an unknown hit-and-run driver. Thereafter, Stephens submitted a claim for workers' compensation benefits. In addition, Stephens submitted a separate claim for damages under the uninsured and underinsured motorist coverage provisions of the Stephens policy.

¶ 5        It is undisputed that Stephens received in excess of $25,000 in workers' compensation benefits. For this reason, First Acceptance contested Stephens's claim for additional damages under the Stephens policy. That policy allows Stephens to claim damages for bodily injury, stemming from accidents with uninsured or underinsured motorists, up to $25,000 per person or $50,000 per accident. However, part C of the Stephens policy, which pertains to uninsured and underinsured motorist coverage, provides as follows:

> "No one will be entitled to receive duplicate payments for the same
> elements of loss for which payment has been made by or on behalf of persons or
> organizations that may be legally responsible. Any amount otherwise payable for
> damages under this coverage shall be reduced by all sums:
>
>          1.        Paid because of the bodily injury or property damage by or
> on behalf of persons or organizations who may be legally responsible. This
> includes all sums paid under Part A, B and C; and

   2.  Paid or payable because of the bodily injury under any of the following or similar law;

    a.  Workers' compensation law; or

    b.  Disability benefits law, with the exception of any Social Security disability benefits; and

   Any payment to any person under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A." (Emphasis in original omitted.)[1] [2]

In this context, "loss" means "sudden, direct, and accidental destruction or damage" but not "diminution of value." "Bodily injury" means "bodily harm, sickness or disease, including death that results therefrom." "Property damage" means "injury to or destruction of the insured auto."[3]

¶ 6  On June 17, 2020, First Acceptance filed a first amended complaint for declaratory judgment, requesting that the trial court declare First Acceptance did not owe uninsured motorist benefits to Stephens arising out of the September 10, 2019, occurrence. First Acceptance alleged it did "not owe any coverage and/or uninsured motorist coverage benefits whatsoever to *** STEPHENS with respect to any bodily injury, property damage or otherwise *** because *** STEPHENS ha[d] already received payments *** pursuant to applicable workers' compensation law in excess of $25,000.00." Therefore, First Acceptance asserted that any benefits Stephens would be entitled to receive from First Acceptance, according to the terms of the uninsured

---

[1]For purposes of part C of the Stephens policy, "uninsured motor vehicle" includes a motor vehicle for which the "operator or owner is unknown."

[2]Part A and B of the Stephens policy pertain to liability coverage and excess medical payments coverage, respectively.

[3]"Property damage" does not include "loss of use of the insured auto" or "damage to property owned by the insured while contained in the insured auto, with the exception of any child restraint system that was in use by a child during an accident to which coverage is applicable."

motorist coverage provisions of the Stephens policy, was subject to the $25,000 per person limit and "completely offset" by the amount Stephens received in workers' compensation benefits. Since Stephens undisputedly received over $25,000 in workers' compensation benefits, First Acceptance contended that their coverage obligation to Stephens was "reduced to $0.00."

¶ 7 On July 9, 2020, First Acceptance filed a motion for a judgment on the pleadings, arguing the Stephens policy clearly and unambiguously mandated a grant of the relief requested in its complaint for declaratory judgment.[4] In addition, First Acceptance argued, when determining whether workers' compensation benefits offset the uninsured motorist coverage contained in an insurance policy, Illinois law does not distinguish between the types of damages claimed by an insured. Therefore, for purposes of an offset under the Stephens policy, First Acceptance asserted that it was irrelevant Stephens's workers' compensation benefits did not include damages attributable to the pain and suffering stemming from his bodily injury.

¶ 8 On August 6, 2020, Stephens responded to First Acceptance's motion for a judgment on the pleadings, in which he also requested a judgment on the pleadings in his favor. Stephens argued the Stephens policy prohibited double recoveries for the same elements of loss and the same types of damages. Stephens explained that he was "only [challenging] the application of the language in this [Stephens] policy to a specific element of damages." Since his workers' compensation benefits did not include any damages for pain and suffering, Stephens argued his claim for those damages was not subject to the offset contained in part C of the Stephens policy.[5]

---

[4]We note that, while First Acceptance did not invoke the Code of Civil Procedure (Code) in its motion for a judgment on the pleadings, section 2-615(e) of the Code states: "[a]ny party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2020).
    [5]Stephens affirmatively stated that he "d[id] not object to the Statement of Facts" contained in First Acceptance's motion for a judgment on the pleadings.

¶ 9    On October 19, 2020, the trial court found the language of the Stephens policy was clear and unambiguous. Under that language, the trial court stated, "a person may not recover twice for property damage for the 'same elements' of property damage" and "any amounts payable under Workers' Compensation law for bodily injury reduce the limits of coverage." In other words, the trial court found the "same elements" limitation on double recoveries for property damage was inapplicable to the workers' compensation reduction for bodily injury. Therefore, the trial court granted First Acceptance's motion for a judgment on the pleadings.

¶ 10    Stephens filed a timely notice of appeal on November 16, 2020.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, the parties present substantially the same arguments, with respect to the propriety of a judgment on the pleadings for either party, as in the trial court. Those arguments have been set out in detail above and will not be reiterated for purposes of this analysis.

¶ 13    We review both a trial court's grant of a motion for a judgment on the pleadings and the interpretation of an insurance policy *de novo. Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010). A motion for a judgment on the pleadings is limited to the pleadings and is properly granted when there is no genuine issue of material fact, such that the movant is entitled to a judgment as a matter of law. *Id.*; accord *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 52. The trial court must consider all well-pleaded facts contained in the pleadings of the nonmoving party, and the fair inferences drawn therefrom, as admitted. *Wilson*, 237 Ill. 2d at 455; accord *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 52. For purposes of the present appeal, Stephens and First Acceptance agree that the material facts are undisputed.

¶ 14    Further, a court's primary objective when construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties, as expressed by the language of the

5

agreement. *Wilson*, 237 Ill. 2d at 455 (quoting *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997)); accord *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 15. If the terms of the insurance policy are clear and unambiguous, then those terms must be given their plain and ordinary meaning and applied as written, unless there is a conflict with the public policy of our State.[6] *Id.* at 455-56 (quoting *Koloms*, 177 Ill. 2d at 479); *Hess*, 2020 IL 124649, ¶ 15.

¶ 15        A court must construe the insurance policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the purpose of the agreement. *Id.* at 456 (quoting *Koloms*, 177 Ill. 2d at 479). Importantly, the purpose of uninsured and underinsured motorist coverage is to put the insured person in the same position as he or she would occupy if the at-fault driver had carried liability coverage in the same amount as stated in the insurance policy. See *Acuity v. Decker*, 2015 IL App (2d) 150192, ¶ 31 (quoting *Burcham v. West Bend Mutual Insurance Co.*, 2011 IL App (2d) 101035, ¶ 31).

¶ 16        Due to the simplicity of the issue presented in this appeal, the required analysis is quite brief and straightforward. Initially, we observe that the language in the second sentence of part C of the Stephens policy is outcome determinative. That second sentence of part C states "[a]ny amount otherwise payable for damages under this [uninsured and underinsured motorist] coverage shall be reduced," without expressed limitation based on the type of damages, "by *all sums*[] *** [p]aid" due to bodily injury under the workers' compensation law. (Emphasis added.)

¶ 17        Next, we apply the undisputed facts to the clear and unambiguous language set forth in the second sentence of part C. Stephens undisputedly received workers' compensation benefits in excess of the $25,000 per person coverage limit contained in the Stephens policy. Hence, after

---

[6]Stephens does not argue the contested portion of the Stephens policy is either ambiguous or against the public policy of Illinois.

applying the offset for workers' compensation benefits received by Stephens under the second sentence of part C, any claim by Stephens for damages related to pain and suffering would exceed the $25,000 per person limit contained in the Stephens policy. In other words, the amount "otherwise payable" to Stephens for pain and suffering would be reduced to zero.

¶ 18       In sum, the all-encompassing $25,000 per person coverage limit and the language of the offset provision contained in the second sentence of part C, which is undisputedly clear and unambiguous, relieves First Acceptance of any contractual duty to pay Stephens's claim. Thus, we hold that the trial court properly granted a judgment on the pleadings for First Acceptance.

¶ 19       As a result of this holding, it is not necessary for our court to decide whether the trial court correctly construed the "elements of loss" language contained in the first sentence of part C.[7] Even if Stephens's claim for pain and suffering was not for "the same element[] of loss for which payment [ha]d been made" by workers' compensation, the claim could properly be denied by First Acceptance based on the $25,000 per person policy limit and the offset language.

¶ 20       For the foregoing reasons, we conclude the trial court properly granted First Acceptance's motion for a judgment on the pleadings after interpreting the Stephens policy.

¶ 21                          III. CONCLUSION

¶ 22       The judgment of the circuit court of Peoria County is affirmed.

¶ 23       Affirmed.

---

[7]The Stephens policy defines "loss" as "sudden, direct, and accidental destruction or damage" but not as "diminution of value." There is no reference to "bodily injury." The liability limitation provision of part C of the Stephens policy does refer to "bodily injury" and derivative claims of "loss," stating:

> "The limit of bodily injury liability shown on the Declarations Page for each person for Uninsured Motorist Coverage and Underinsured Motorist Coverage is our maximum Limit of Liability for all damages for bodily injury, including derivative claims, or death sustained by any one person in any one auto accident. Derivative claims include, but are not limited to, loss of consortium, loss of services, loss of society, or loss of companionship." (Emphasis in original omitted.)