NOTICE
Decision filed 04/05/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210168-U

NO. 5-21-0168

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| WEST BEND MUTUAL INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 20-CH-23 |
| | ) | |
| VAUGHAN'S FETCH, INC.; HARLAN PORTEE; and JOHN LANE CAMBRON, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | Honorable |
| | ) | Evan L. Owens, |
| (John Lane Cambron, Defendant-Appellee). | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court erred in granting summary judgment in favor of the injured driver and against the insurer where the limit of liability provision in the commercial auto insurance policy was not ambiguous when read in conjunction with the policy's declarations. As a result, the judgment is reversed, and the cause is remanded with directions to enter a summary judgment in favor of the insurer.

¶ 2   The plaintiff, West Bend Mutual Insurance Company (West Bend), appeals from a summary judgment entered in favor of the defendant-appellee, John Lane Cambron, declaring that a commercial auto liability policy issued by West Bend did not clearly and unambiguously prohibit the stacking of bodily injury liability limits. On appeal, West Bend claims that the trial court erred in granting Cambron's motion for summary judgment and denying its motion for summary judgment where the limit of liability provision in its policy unambiguously prohibited the stacking

1

of liability coverage. We reverse and remand with directions to enter a summary judgment in favor of West Bend.

¶ 3                                    I. BACKGROUND

¶ 4    On October 2, 2018, a Dodge Ram pickup truck owned by Vaughan's Fetch, Inc., and driven by Harlan Portee, struck the rear of a vehicle driven by John Lane Cambron. The rear-end impact propelled Cambron's vehicle into the vehicle ahead of it, and then across the center line of the roadway, where it collided with a tractor-trailer, owned by BF&C Trucking, and operated by Michael Flanagan. Cambron, Flanagan, and two other persons, Lesa Suits and Lorena Suits, were injured in the accident. BF&C Trucking and the Illinois Department of Transportation (IDOT) sustained property damage.

¶ 5    On the day of the accident, the Dodge Ram pickup was insured under a commercial auto insurance policy issued by West Bend. The commercial auto policy covered a fleet of vehicles and trailers owned by Vaughan's Fetch.

¶ 6    On March 19, 2020, West Bend filed an action in interpleader, seeking to deposit the limits of its policy into the registry of the circuit court of Jefferson County, for the benefit of all those claiming bodily injury or property damage as a result of the October 2, 2018, accident. West Bend identified Cambron, Harlan Portee, Vaughan's Fetch, Flanagan, BF&C Trucking, Lesa Suits, Lorena Suits, and IDOT as interested parties and named them as defendants in the action. In an amended complaint for interpleader, West Bend alleged that under the combined single limit (CSL) policy issued to Vaughan's Fetch, the limit of liability for all bodily injury and property damages resulting from any one accident was $1 million, regardless of the number of claims made or vehicles involved. West Bend further alleged that it was unable to determine the proper distribution of its $1 million in coverage among the various claimants. West Bend requested an

2

order permitting it to deposit the sum of $1 million into the registry of the court for the benefit of all claimants. West Bend also sought a full release of liability for Vaughan's Fetch and Harlan Portee, and an order discharging it from any and all claims of the defendants.

¶ 7 Cambron filed an answer to the interpleader action and a counterclaim. In the answer, Cambron denied that the liability coverage in the West Bend policy was limited to $1 million per accident. In the counterclaim, Cambron sought a judgment declaring that the West Bend policy failed to unambiguously limit the liability coverage to $1 million per accident. Cambron alleged that the policy's limit of liability provision did not identify the coverage limit, but rather referred the reader to the declarations pages. He further alleged that the $1 million limit of liability was listed multiple times in the declarations pages, and thereby created an ambiguity, permitting the stacking of the liability limits.

¶ 8 While the actions for interpleader and declaratory judgment were pending, West Bend settled claims made by Lesa Suits, Lorena Suits, Michael Flanagan, BF&C Trucking, and IDOT. Pursuant to West Bend's motion, those parties were dismissed with prejudice from the interpleader action.

¶ 9 West Bend and Cambron also entered into a partial settlement of the case, based on a high-low agreement, but they continued to litigate the stacking issue. Under the partial settlement agreement, the amount of Cambron's settlement was dependent upon a final determination of the stacking issue. Specifically, if, after the exhaustion of all appeals, it was determined that West Bend failed to clearly limit its liability to $1 million for each accident, then Cambron would receive the higher amount set out in the settlement agreement. If, after the exhaustion of all appeals, it was determined that West Bend's liability coverage was limited to $1 million per accident, then Cambron would receive the lower amount set out in the settlement agreement.

3

¶ 10    Subsequently, Cambron and West Bend filed cross-motions for summary judgment on the stacking issue. The parties agreed that there were no disputed issues regarding any material fact, and that the only issue was whether the West Bend policy clearly and unambiguously limited liability coverage for bodily injury and property damage to $1 million per accident.

¶ 11    The West Bend commercial auto insurance at issue here covered a fleet of 34 vehicles and trailers owned by the policyholder, Vaughan's Fetch. Section I of the "Motor Carrier Coverage Form" informed the policyholder that the schedule of coverages and covered autos could be found in "Item Two" of the declarations. Section II of the "Motor Carrier Coverage Form" addressed the liability coverage for covered autos and provided, in pertinent part:

> "**Section II – Covered Autos Liability Coverage**
>
> **A. Coverage**
>
> We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance[,] or use of a covered 'auto'.
>
> * * *
>
> **C. Limit of Insurance**
>
> Regardless of the number of covered 'autos', 'insureds', premiums paid, claims made[,] or vehicles involved in the 'accident', the most we will pay for the total of all damages and 'covered pollution cost or expense' combined resulting from any one 'accident' is the Limit of Insurance for Covered Autos Liability Coverage shown in the Declarations.
>
> * * *."

¶ 12    The first page of the declarations section of the policy is entitled "Motor Carrier Coverage Declarations." Under "ITEM TWO: Schedule of Coverages and Covered Autos" on this page, there is a table with four columns containing the following headings: "Coverages," "Covered Autos," "Limit," and "Premium." The "Coverages" column lists the types of coverage provided in the policy, *e.g.*, covered autos liability, medical payments, uninsured motorist, underinsured motorist, comprehensive, and collision. The "Covered Autos Liability" row, depicted below, includes cells containing a numeric symbol related to covered autos, the coverage limit, and the premium for that coverage.

| Coverages | Covered Autos | Limit (the most we will pay for any one "Accident" or "Loss") | Premium |
|---|---|---|---|
| Covered Autos Liability | 61 | $1,000,000 Each Accident | [redacted] |

The numeric symbol "61" is one of several "Covered Autos Designation Symbols" identified and described in the "Motor Carrier Coverage Form" of the policy. Symbol 61 is a shorthand reference for "any auto" in the Vaughan's Fetch fleet, including autos acquired after the commencement of the policy period. The table shows that the limit of liability for "Covered Autos" is $1 million for each accident.

¶ 13    The next section of the policy contains the heading, "ITEM THREE: Schedule of Covered Autos You Own." This schedule contains tables identifying each covered vehicle along with a corresponding schedule of coverages. The first table provides a description of each individual covered vehicle, the original cost of that vehicle, and the total premium for that vehicle. The second table contains the classification and garaging location for each covered vehicle. The remaining tables identify the types of coverage for each individual covered vehicle, the premium for each

5

coverage, and the limit of liability. For example, the "Covered Autos Liability" coverage for the Dodge Ram pickup involved in the accident appeared as follows:

| Veh. No. | Covered Autos Liability | |
| --- | --- | --- |
| | CSL | Premium |
| 8 | $1,000,000 | [redacted] |

¶ 14    In his motion for summary judgment, Cambron argued that he was entitled to summary judgment because the West Bend policy did not unambiguously provide that the limit of bodily injury liability coverage was $1 million per accident. Cambron pointed out that the "Limit of Insurance" provision in the policy did not identify the coverage limits, but rather referred the reader to the policy's declarations section to discover the limit. Cambron claimed that West Bend's policy was ambiguous because there were seven copies of the "Motor Carrier Coverage Declarations" pages found in the policy, each showing that there was a $1 million limit of liability, and because the $1 million limit of liability was listed next to each specific vehicle in the "Schedule of Covered Autos You Own." He asserted that in cases where an insurer has directed the reader to the declarations page to discover the limit of liability, and the declarations page lists the limit of liability multiple times, Illinois courts have found that the insurer failed to unambiguously limit its liability, permitting the stacking of coverage limits.

¶ 15    In its motion for summary judgment, West Bend argued that the "Limit of Insurance" clause in the policy clearly and unequivocally provided that regardless of the number of covered autos, claims made, or vehicles involved, the most it would pay for the total of all damages resulting from any one accident was "the 'Limit of Insurance for Covered Autos Liability Coverage' shown in the Declarations." West Bend further argued that the declarations plainly provided that the "Covered Autos Liability" coverage for any owned vehicle or trailer was limited

6

to $1 million for each accident, and the fact that the policy insured a fleet of 34 vehicles and trailers did not impact the liability limit.

¶ 16    After considering the motions, the supplemental briefings, and the arguments of the parties, the trial court entered an order denying West Bend's motion for summary judgment and granting Cambron's motion for summary judgment. The court declared that the West Bend policy did not clearly and unambiguously limit liability coverage to $1 million for each accident. The court also determined that the parties' "high-low" settlement agreement provided an appropriate remedy, and it made no specific finding as to the total amount of liability coverage available under the policy. West Bend appealed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, West Bend contends that the trial court erred in granting Cambron's motion for summary judgment and denying its cross-motion for summary judgment. West Bend claims that the court erroneously found that the West Bend commercial auto policy did not clearly prohibit the stacking of bodily injury liability coverage.

¶ 19    Summary judgment is properly granted only where the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The trial court's order granting summary judgment is reviewed *de novo*. *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 14. In addition, the construction of an insurance policy presents a question of law that is reviewed *de novo*. *Hess*, 2020 IL 124649, ¶ 14.

¶ 20    An insurance policy is a contract, and the general rules governing the construction of other types of contracts also govern the construction of insurance policies. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). In construing an insurance policy, the court's primary

7

objective is to ascertain and give effect to the intention of the parties as expressed in the language of the policy. *Hobbs*, 214 Ill. 2d at 17. An insurance policy is to be construed as a whole, and the provisions in the policy should be read together, rather than in isolation. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). If the policy language is clear and unambiguous, the language will be applied as written unless it contravenes public policy. *Hobbs*, 214 Ill. 2d at 17. If, however, the policy language is susceptible to more than one reasonable interpretation, it is ambiguous and will be strictly construed against the insurer who drafted the policy. *Central Illinois Light*, 213 Ill. 2d at 153. The touchstone is whether the policy provision is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993). Thus, the court should consider only reasonable interpretations, and it should not strain to find an ambiguity where none exists. *Hobbs*, 214 Ill. 2d at 17.

¶ 21    In general, antistacking provisions in insurance policies are not contrary to public policy. *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 229-30 (1995). If an antistacking provision is unambiguous, it will be given effect by a reviewing court. *Hobbs*, 214 Ill. 2d at 18; *Grzeszczak*, 168 Ill. 2d at 230.

¶ 22    In this case, West Bend contends that the Limit of Insurance provision clearly and unambiguously prohibits the stacking of liability coverage, and the fact that the policy covers 34 vehicles and trailers does not impact the limit of liability coverage for each accident. Cambron does not claim that the language in the Limit of Insurance provision is ambiguous. Rather, he contends that ambiguity arises because there were seven copies of the "Motor Carrier Coverage Declarations" found in the policy, each showing that there was a $1 million limit of liability, and because the $1 million limit of liability coverage was printed next to each covered vehicle listed

8

in the "ITEM THREE: Schedule of Covered Autos You Own." Both parties rely on *Hess v. Estate of Klamm*, 2020 IL 124649, in support of their respective arguments.

¶ 23    In *Hess*, the Illinois Supreme Court considered whether an antistacking provision in a multi-vehicle automobile policy, when read together with the declarations, was ambiguous, allowing for stacking of liability coverage. The antistacking clause provided, in part:

"LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of 'bodily injury' sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for 'bodily injury' resulting from any one auto accident."

The Limit of Liability clause further provided that the limit of liability shown in the declarations was the most the insurer would pay regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the auto accident. *Hess*, 2020 IL 124649, ¶ 23.

¶ 24    The declarations did not list liability limits separately for each covered vehicle. Instead, the liability limits were listed on the first page of the declarations one time for Autos 1, 2, and 3, and the liability limits were restated on the second page for Auto 4. *Hess*, 2020 IL 124649, ¶ 25. In considering whether the listing of the liability limits twice in the declarations resulted in an ambiguity, the supreme court reiterated its prior holding that there is no *per se* rule that " 'an insurance policy will be deemed ambiguous as to the limits of liability anytime the limits are noted

9

more than once on the declarations.' " *Hess*, 2020 IL 124649, ¶ 22 (quoting *Hobbs*, 214 Ill. 2d at 26 n.1). The court further directed that the issue of ambiguity should be decided on a case-by-case basis, and that the declarations page should be construed together with the other provisions in the policy, and not read in isolation. *Hess*, 2020 IL 124649, ¶ 22; *Hobbs*, 214 Ill. 2d at 26 n.1. Applying those principles, the supreme court found there was a reasonable explanation for restating the limits of liability on the second page of the declarations, namely that there was not enough space to include an additional column listing the coverages and premiums for Auto 4 on the first page. *Hess*, 2020 IL 124649, ¶ 25. The court determined that the antistacking clause, when read together with the declarations, prohibited the stacking of bodily injury liability coverage. *Hess*, 2020 IL 124649, ¶ 25.

¶ 25    In this case, the "Limit of Insurance" provision in the West Bend policy clearly stated that regardless of the number of covered autos, insureds, premiums paid, claims made, or vehicles involved in the accident, "the most we will pay for the total of all damages *** resulting from any one 'accident' is the Limit of Insurance for Covered Autos Liability Coverage shown in the Declarations." The limit for "Covered Autos Liability" shown in the declarations was "$1,000,000 each accident." We are not persuaded by Cambron's claim that an ambiguity with respect to stacking was created because there were seven copies of the "Motor Carrier Coverage Declarations" found in the policy. West Bend explained that each time the subject policy was modified because of a new endorsement or limitation, the Motor Carrier Coverage Declarations and the Motor Carrier Coverage Schedule were included. The copies of the Motor Carrier Coverage Declarations are identical and contain the same limit of liability for Covered Autos. We do not find that the duplication of the declarations pages under these circumstances created an

10

ambiguity with respect to the stacking of coverage. *Profitt v. OneBeacon Insurance*, 363 Ill. App. 3d 959, 963 (2006).

¶ 26    Cambron's argument that the policy is ambiguous because the $1 million limit of liability coverage was printed next to each covered vehicle listed in the "Schedule of Covered Autos You Own" is likewise unpersuasive. The "Schedule of Covered Autos You Own" does nothing more than indicate the amount of liability coverage provided for each owned vehicle and the premium allotted for that coverage. To the extent that this schedule could create some confusion about whether the liability coverage could be stacked, the "Limit of Insurance" provision, read together with the "Limit" of "Covered Autos Liability Coverage" shown in the Motor Carrier Coverage Declarations, provides clarity. The "Limit of Insurance" provision refers the policyholder to the "Limit of Insurance for Covered Autos Liability Coverage" shown in the declarations, rather than the "Schedule of Covered Autos You Own," and the "Limit" expressly provides that "the most we will pay for any one accident or loss" is "$1,000,000 each accident."

¶ 27    Our supreme court has noted that though the declarations page of an insurance policy contains important information for the policyholder, it is just "one piece of the insuring agreement" and "cannot address every single coverage issue." *Hobbs*, 214 Ill. 2d at 23. The supreme court further noted that uncertainty could arise if the declarations page was read in isolation from the rest of the policy provisions, reiterating that the policy must be construed by examining the document as a whole. *Hess*, 2020 IL 124649, ¶ 22; *Hobbs*, 214 Ill. 2d at 23. In this case, the West Bend policy contains a clear "Limit of Insurance" provision. When that provision is construed together with the other provisions in the policy, including the "Limit" for "Covered Autos Liability" in the declarations pages, we find no ambiguity regarding the limits of liability coverage that would allow for stacking of that coverage.

11

¶ 28                        III. CONCLUSION

¶ 29    As noted, in construing an insurance policy, a court will not strain to find an ambiguity where none exists. In construing the West Bend commercial auto insurance policy as a whole and reading the antistacking provision together with the declarations and other provisions in the policy, we find that there is no ambiguity as to the amount of liability coverage for bodily injury and property damage. The liability coverage is limited to $1 million per accident. Accordingly, the trial court's entry of summary judgment in favor of Cambron is reversed, and the cause is remanded with instructions to enter a summary judgment in favor of West Bend.


¶ 30    Reversed and remanded with directions.