2023 IL App (4th) 220827

NO. 4-22-0827

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MARK KUHN and KAREN KUHN, | ) | Appeal from the |
|        Plaintiffs-Appellees, | ) | Circuit Court of |
|        v. | ) | McLean County |
| OWNERS INSURANCE COMPANY; | ) | No. 19MR643 |
| B. McLEAN ARNOLD, Special Representative of | ) | |
| Ryan Hute, Deceased; JASON FARRELL, | ) | |
| Individually; JASON FARRELL, d/b/a Jason Farrell | ) | |
| Trucking; 3 GUYS AND A BUS, INC.; KATHLEEN | ) | |
| CRABTREE, Executor of the Estate of Charles C. | ) | |
| Crabtree, Deceased; STEVEN B. PRICE; JESSICA | ) | |
| O'BRIEN; MONTINIQUE HOWARD; HALEY | ) | |
| WILLAN; GRACE STORM; ABBY HOEFT; | ) | |
| OLIVIA REED; KIRSTEN LELLELID; and | ) | |
| JORIANA BISCHOFF, | ) | |
|        Defendants | ) | |
| | ) | |
| (Owners Insurance Company, Defendant-Appellant; | ) | |
| Kathleen Crabtree; Steven B. Price; Jessica O'Brien; | ) | |
| Montinique Howard; Haley Willan; Grace Storm; | ) | |
| Abby Hoeft; Olivia Reed; Kirsten Lellelid; and Joriana | ) | |
| Bischoff, Defendants-Appellees). | ) | Honorable |
| | ) | Scott Kording, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Turner and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        In November 2019, plaintiffs, Mark and Karen Kuhn (the Kuhns), filed a declaratory judgment action seeking a judicial determination of the available liability insurance covering an accident between a semitruck owned by Jason Farrell and a school bus driven by Mark.

The semitruck was insured under a policy issued by defendant, Owners Insurance Company (Owners), and that policy also insured six other vehicles—two other semitrucks and four trailers—that were not involved in the accident. Each vehicle had a limit of $1 million per accident. The Kuhns sought a declaration that the coverage limits for all of the covered vehicles should be aggregated, or "stacked," resulting in a total of available liability insurance of $7 million for the accident.

¶ 2          In April 2021, the parties filed cross-motions for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2020)). The Kuhns argued the policy was ambiguous because it listed a limit of coverage separately for each vehicle (for a total of seven times) and, as a result, the coverages should be stacked. Owners argued that the policy was unambiguous and contained an antistacking clause, which provided that "[t]he Limit of Insurance for this coverage may not be added to the limits for the same or similar coverage applying to other autos insured by this policy to determine the amount of coverage available for any one accident." Subsequently, the parties fully briefed the cross-motions and made oral arguments to the trial court.

¶ 3          In August 2022, the trial court entered a written judgment in favor of the Kuhns, concluding that (1) the policy was ambiguous; (2) because the ambiguity should be construed against Owners, stacking of the policy's coverage limits was permitted; and (3) the aggregate limit of insurance for liability coverage under the policy was $7 million. Accordingly, the court granted the Kuhns' motion for summary judgment and entered judgment against Owners.

¶ 4          Owners appeals, arguing the trial court erred by concluding that (1) the antistacking clause was ambiguous and (2) stacking of the policy's coverage limits was permitted. We agree, reverse the trial court's judgment, and remand with directions.

¶ 5                              I. BACKGROUND

¶ 6              A. The Concept of "Stacking" Coverage Limits of Automobile Insurance

¶ 7              Because resolution of this case involves an uncommon and generally unfamiliar area of auto insurance law, we begin by explaining the concept of "stacking" at issue here.

¶ 8                              1. *What Is Stacking?*

¶ 9              "Stacking ordinarily involves combining or aggregating the policy limits applicable to more than one vehicle where the other vehicles are not involved in the accident." *Progressive Premier Insurance Co. of Illinois v. Kocher*, 402 Ill. App. 3d 756, 760, 932 N.E.2d 1094, 1098 (2010). "The issue of whether coverage may be stacked arises only because the existence of coverage is a given." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 23, 823 N.E.2d 561, 567 (2005). That is, stacking, by its nature, requires that one occurrence is covered by either (1) multiple policies or (2) multiple vehicles under the same policy, so that those multiple sources of coverage may be combined. See *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 186-87, 620 N.E.2d 355, 359 (1993) (explaining that whether the antistacking clause appeared in only one of two policies did not matter because coverage can only be stacked when an occurrence is covered more than once).

¶ 10              2. *Stacking of Uninsured and Underinsured Motorist Coverages*

¶ 11              Stacking frequently arises in the context of underinsured motorist (UIM) or uninsured motorist (UM) coverage (see *Progressive Premier Insurance Co. v. Cannon*, 382 Ill. App. 3d 526, 530, 889 N.E.2d 790, 794 (2008)) because (1) UIM and UM coverage is provided to an insured person "*regardless of the vehicle* in which the insured person is located when injured" (emphasis added) (*Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 179, 370 N.E.2d 1044, 1049 (1977)), (2) the purpose of UIM and UM is " 'to place the insured in the same position he

would have occupied if the tortfeasor had carried adequate insurance' " (*Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 483, 687 N.E.2d 1021, 1026 (1997)), and (3) UIM and UM coverage is required by statute to be included in all automobile insurance policies (*Squire*, 69 Ill. 2d at 176; 215 ILCS 5/143a, 143a-2 (West 2020)). These three factors mean that someone who obtains insurance for multiple vehicles is required to have UIM and UM coverage for *each vehicle*, which necessarily means that if such a person is in an accident caused by an uninsured or underinsured vehicle, then that person is potentially covered by the UIM and UM at least twice, once for each vehicle. See *Squire*, 69 Ill. 2d at 179-80 (concluding that, in the absence of clear antistacking language, an accident victim was entitled to aggregate UM coverages under the terms of an insurance policy that insured two vehicles and listed the UM coverage and premium for each vehicle separately).

¶ 12                                    3. *Stacking of Auto Liability Coverages*

¶ 13            If stacking in the UIM/UM context were not sufficiently confusing, the concept becomes even more unclear in the context of auto liability coverage. Unlike UIM/UM coverage, which is sought by a *person* from his or her own auto insurance policy—sometimes notwithstanding the fact that the covered auto was not involved in the accident (see *Kocher*, 402 Ill. App. 3d at 760)—auto liability coverage attaches to a particular *vehicle* (see *West v. American Standard Insurance Co. of Wisconsin*, 2011 IL App (1st) 101274, ¶¶ 9-10, 952 N.E.2d 1274). Recall that "[t]he issue of whether coverage may be stacked arises only because the existence of coverage is a given." *Hobbs*, 214 Ill. 2d at 23. Generally, for auto liability coverage to be applicable, the automobile must (1) be covered by the policy and (2) cause damage while being used as an automobile. *Kopier v. Harlow*, 291 Ill. App. 3d 139, 142-43, 683 N.E.2d 536, 539 (1997). Accordingly, it is not clear that "coverage is a given" for vehicles not involved in the

accident because they did not cause the accident.

¶ 14    The Second District Appellate Court succinctly explained as follows:

" 'The insurer's undertaking in an automobile liability policy to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury "arising out of the ownership, maintenance or use of the owned automobile" is directly related to and required the involvement of one of the vehicles specifically mentioned in the policy or a replacement or temporary substitute therefor for which a specific premium was charged; coverage provided by such undertaking is automobile-based and not person-based and is insurance on the vehicle and not in the nature of a personal accident policy.' 6B J. Appleman & J. Appleman, Insurance Law & Practice § 4291 (Supp. 1997).

For this reason, courts, whether or not they allow the stacking of uninsured motorist coverage or medical payment coverage, do not allow the stacking of liability coverage. [Citations.] Although plaintiff here does not argue that the coverages should be stacked, the rationale behind not allowing stacking of liability coverage—that liability policies insure particular cars—is contrary to plaintiff's position. Because the insurance attaches to a particular car, plaintiff is incorrect that he should be allowed to access the liability limit for another insured vehicle not involved in the accident." *Id.*

¶ 15    However, the Illinois Supreme Court recently declined to consider adopting a *per se* rule barring stacking of automobile liability coverage as a matter of law because the antistacking provision in that case was unambiguous and enforceable as written. *Hess v. Estate of Klamm*, 2020 IL 124649, ¶ 30, 161 N.E.3d 183. We also decline to answer whether stacking of liability coverage

is *per se* prohibited because we similarly conclude that the antistacking provision in this case is likewise enforceable.

¶ 16                                     B. The Declaratory Judgment Complaint

¶ 17            In November 2019, the Kuhns filed their complaint for declaratory judgment against Owners, in which they sought a judgment that Owners was required to pay $7 million pursuant to the relevant insurance policy. The Kuhns attached to their declaratory judgment complaint a copy of (1) the underlying personal injury complaint and (2) the declarations and insurance policy at issue. The parties stipulated that (1) the declarations and policy were true and correct copies of the insurance provided and (2) the policy should be interpreted under Illinois law.

¶ 18                                     1. *The Facts of the Underlying Complaint*

¶ 19            The declaratory judgment complaint alleged that, in September 2019, the Kuhns filed the underlying personal injury complaint against defendants B. McLean Arnold, special representative of Ryan Hute, deceased; Jason Farrell individually; Jason Farrell d/b/a Jason Farrell Trucking; and 3 Guys and a Bus, Inc. (we note these "underlying defendants" are not parties to this appeal), asserting various claims of negligence relating to a car accident. In December 2018, Hute was driving a 2010 Kenworth semitruck owned by Farrell that collided with a school bus driven by Mark Kuhn and occupied by several other people. The semitruck and school bus were traveling in opposite directions on Interstate 74 at the time of the accident. Mark and many of the bus passengers were severely injured or died in the crash. The underlying complaint alleged that, at the time of the accident, Hute was (1) acting in the scope of his employment with Farrell, Farrell Trucking, "and/or" 3 Guys and a Bus, Inc. and (2) engaged in several acts of negligence that caused the crash.

¶ 20                                     2. *The Insurance Policy at Issue*

¶ 21    The Kuhns' complaint for declaratory judgment alleged that the 2010 Kenworth semitruck and Hute were both covered by an Owners insurance policy that insured a total of three semitrucks (including the Kenworth) and four trailers. Farrell owned or operated all of the covered trucks and trailers. The policy provided "Combined Liability" coverage on each of the seven vehicles of up to "$1 Million each accident."

¶ 22    The declaratory judgment complaint noted that the policy provided liability coverage as follows: "We [(Owners)] will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto as an auto." The policy further provided that Owners would "pay damages for bodily injury, property damage and covered pollution cost or expense up to the Limit of Insurance shown in the Declarations for this coverage." The Kuhns alleged that the term "Limit of Insurance" was not defined in the policy.

¶ 23    The complaint further alleged that the declarations pages had two separate sections outlining coverage and policy limits, which the complaint described as follows:

"The first [section], titled 'ITEM TWO—SCHEDULE OF COVERED AUTOS AND COVERAGES,' contains a chart outlining various different types of coverages and limits, with separate premiums paid for each type of coverage, and lists a single one million dollar *** limit for 'Combined Liability' coverage.

The second [section], titled 'ITEM THREE—SCHEDULE OF COVERED AUTOS, ADDITIONAL COVERAGES AND ENDORSEMENTS,' contains a separate and different list of coverages, including separate listings for seven separate vehicles, with separately listed limits and separately listed premiums paid for each. This section lists seven separate one million dollar *** limits for

'Combined Liability' coverage, one limit for each listed vehicle."

¶ 24    The declaratory judgment complaint asserted that the policy was ambiguous because it set forth two differing amounts of coverage available—namely, a single $1 million limit and seven separate $1 million limits. Accordingly, the declaratory judgment complaint sought a declaration that the policy should be interpreted to provide a $7 million limit.

¶ 25    To help the reader, the declarations pages containing Item Two and the first page of Item Three are shown below.

**Owners**
INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Page 1

58979 (10-16)
Issued    12-06-2018

COMMERCIAL AUTO POLICY DECLARATIONS
PREFERRED PROGRAM

AGENCY    PRINS INSURANCE INC
07-0677-00        MKT TERR 038    (712) 729-3252

Endorsement Effective    11-27-2018
POLICY NUMBER        51-829-065-00
Company Use        39-04-IA-1806

ITEM ONE
NAMED INSURED    JASON FARRELL
JASON FARRELL TRUCKING

ADDRESS    3717 210TH ST

CLINTON IA 52732-8920

Company Bill

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| 06-22-2018 | to 06-22-2019 |

Entity:    Individual
IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM TWO - SCHEDULE OF COVERED AUTOS AND COVERAGES**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those **autos** shown as covered **autos**. **Autos** are shown as covered **autos** for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS section of the Commercial Auto Policy next to the name of the coverage.

| COVERAGES | | COVERED AUTOS SYMBOLS | LIMIT OF INSURANCE FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|---|
| Combined Liability | | 7, 8, 9, 19 | $1 Million each accident | $6,311.69 |
| Uninsured/Underinsured Motorist Coverage | | 7 | Uninsured Motorist - $100,000 each person/ $100,000 each accident | $27.72 |
| | | 7 | Underinsured Motorist - $100,000 each person/ $100,000 each accident | $53.31 |
| Medical Payments | | 7 | $5,000 each person | $39.27 |
| Physical Damage | Comprehensive | 7 | $250 deductible applies for each covered auto unless a deductible appears in ITEM THREE. | $2,120.34 |
| | Collision | 7 | $500 deductible applies for each covered auto unless a deductible appears in ITEM THREE. | $5,579.75 |
| | Road Trouble Service | | | No Coverage |
| | Additional Expense | | | No Coverage |
| | | | Premium for Endorsements and Terrorism Coverage | $201.50 |
| | | | ESTIMATED TOTAL PREMIUM* | $14,333.58 |

* This policy may be subject to final audit.

- 8 -

# *Owners*

Page 3

58979 (10-16)
Issued    12-06-2018

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

AGENCY   PRINS INSURANCE INC
07-0677-00          MKT TERR 038          (712) 729-3252

NAMED INSURED  JASON FARRELL
JASON FARRELL TRUCKING

ADDRESS    3717 210TH ST

CLINTON  IA  52732-8920

**COMMERCIAL AUTO POLICY DECLARATIONS**
**PREFERRED PROGRAM**

Endorsement Effective    11-27-2018

**POLICY NUMBER**          **51-829-065-00**

Company Use              39-04-IA-1806

| Company Bill | **POLICY TERM** | |
|---|---|---|
| | 12:01 a.m. to 06-22-2018 | 12:01 a.m. 06-22-2019 |

This policy is amended in consideration of the additional or return premium shown below.  This Declarations voids and replaces all previously issued Declarations bearing the same policy number and premium term.

**ITEM THREE - SCHEDULE OF COVERED AUTOS, ADDITIONAL COVERAGES AND ENDORSEMENTS**

| | TERRITORY | CLASS |
|---|---|---|
| Hired Autos | 048 Clinton County, IA | SPL |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million each accident | $72.91 | |
| Terrorism Coverage | | .36 | |
| | TOTAL | $73.27 | |
| | | | No Charge |

ITEM DETAILS:  Estimated cost of hire - liability  $ If Any     (Subject to audit)

160          1184

| | TERRITORY | CLASS |
|---|---|---|
| Non-Owned Autos Liability | 048 Clinton County, IA | SPL |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million each accident | $56.33 | |
| Terrorism Coverage | | .28 | |
| | TOTAL | $56.61 | |
| | | | No Charge |

160          1184

¶ 26    The declarations page for the semi involved in the accident provided as follows:

Page 6

OWNERS INS. CO.

58979 (10-16)
Issued    12-06-2018

AGENCY    PRINS INSURANCE INC
07-0677-00              MKT TERR 038

Company    POLICY NUMBER        51-829-065-00
Bill          Company Use          39-04-IA-1806

NAMED INSURED    JASON FARRELL

Term  06-22-2018  to  06-22-2019

|  |  | TERRITORY | CLASS |
|---|---|---|---|
| 5. 2010 KW T660 VIN: 1XKAD49X1AJ270127 | | 048 Clinton County, IA | |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million each accident | $2,265.28 | |
| Uninsured Motorist | $ 100,000 each person/$ 100,000 each accident | 9.24 | |
| Underinsured Motorist | $ 100,000 each person/$ 100,000 each accident | 17.77 | |
| Medical Payments | $ 5,000 each person | 13.09 | |
| Comprehensive | ACV - $2,500 deductible | 1,117.83 | |
| Collision | ACV - $2,500 deductible | 2,848.38 | |
| Terrorism Coverage | | 31.36 | |
| | TOTAL | $6,302.95 | |
| | | | No Charge |

Interested Parties:
  Lienholder: MAQUOKETA STATE BANK, 203 N MAIN ST, MAQUOKETA, IA 52060-2204

Additional Endorsements For This Item:  58329 (10-16)    58330 (10-16)    58402 (05-16)

ITEM DETAILS: Extra heavy truck-tractor operated within a 300 mile radius.
USE CLASS (00753): Truckers - Miscellaneous.
Commercial Auto Plus Coverage Package applies.
Vehicle Count Factor Applies.
A 5% seat belt credit has been applied to BI and/or Med Pay premium.
Diminished Value Coverage applies.

160        0143665 A 1184

| 6. 2000 NON OWNED TRAILER VIN: NON OWNED | | 048 Clinton County, IA | |
|---|---|---|---|
| Secured Interested Party Changed | | | |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million each accident | $78.66 | |
| Comprehensive | ACV - $2,500 deductible | 133.85 | |
| Collision | ACV - $2,500 deductible | 327.49 | |
| Terrorism Coverage | | 2.70 | |
| | TOTAL | $542.70 | |
| | | | No Charge |

Interested Parties:
  Lienholder: XTRA LEASE LLC, 850 66TH AVE SW, CEDAR RAPIDS, IA 52404-4709

ITEM DETAILS: Livestock trailer operated within a 300 mile radius.
USE CLASS (00753): Truckers - Miscellaneous.
Vehicle Count Factor Applies.
Diminished Value Coverage applies.

160        0080000  1184

¶ 27    In May 2020, the Kuhns filed their first amended complaint for declaratory judgment in which they added the following people as nominal defendants to the declaratory judgment action solely for the purpose of binding them by the terms of any judgment: (1) Kathleen Crabtree, executor of the estate of Charles C. Crabtree, deceased, (2) Steven B. Price, (3) Jessica O'Brien, (4) Montinique Howard, (5) Haley Willan, (6) Grace Storm, (7) Abby Hoeft, (8) Olivia Reed, (9) Kirsten Lellelid, and (10) Joriana Bischoff (collectively, potential claimants). The potential claimants are people other than the Kuhns who were injured in the accident, some of whom have filed lawsuits against Farrell and participated in the proceedings below. Because the potential claimants raise the same arguments and are aligned with the Kuhns, we do not address their arguments separately.

¶ 28    In June 2020, Owners filed an answer, denying that (1) the policy was ambiguous and (2) it permitted stacking.

¶ 29            C. The Cross-Motions for Summary Judgment

¶ 30    In April 2021, the Kuhns filed a motion for summary judgment, and Owners filed a cross-motion for summary judgment. The Kuhns argued that the wording of the policy and accompanying declarations were ambiguous pursuant to Illinois case law because the coverages and premiums set forth in the declarations were repeated for each insured vehicle. See *Bruder*, 156 Ill. 2d at 192 ("It would not be difficult to find an ambiguity created by such a listing [(next to the premiums for each vehicle)] of the bodily injury liability limit for each person insured. It could easily be interpreted that *** [the] total limit [should be] $200,000 *** because a figure of $100,000 would be shown for each [vehicle]."). That is, the declarations pages identified each covered vehicle and, below that information, listed (1) each type of coverage on that vehicle, (2) the limit of liability for each coverage on that vehicle, and (3) the premium paid for each type

- 11 -

of coverage on that vehicle. Because the limits were listed for each of the seven covered vehicles along with a corresponding premium for the coverage, the Kuhns asserted that the declarations were ambiguous and the policy should be interpreted to permit the stacking of liability limits to provide a maximum coverage of $7 million.

¶ 31 Owners argued that the policy declarations were consistent with each other and not ambiguous. Specifically, Owners contended that (1) Item Two provided a summary of the coverages, limits, and premiums for all vehicles under the policy and (2) Item Three provided that same information broken down on a vehicle-by-vehicle basis. Additionally, Owners contended that the policy's antistacking provisions were unambiguous and prohibited aggregated limits for the same or similar coverage on vehicles not involved in the accident.

¶ 32 Owners explained that the terms of the liability coverage were set forth in section II of the policy, titled "COVERED AUTOS LIABILITY COVERAGE." Subsection A described the "coverage" and provided that Owners would "pay all sums an insured legally must pay as damages *** caused by an accident and resulting from the ownership, maintenance or use of a covered auto as an auto."

¶ 33 Paragraph C of the liability coverage section of the policy provided as follows:

"**C. LIMIT OF INSURANCE**

**We** will pay damages for **bodily injury**, **property damage** and **covered pollution cost or expense** up to the Limit of Insurance shown in the Declarations for this coverage. Such damages shall be paid as follows:

**1.** When combined liability limits are shown in the Declarations, the limit shown for each **accident** is the total amount of coverage and the most we will pay for damages because of or arising out of **bodily injury**, **property**

- 12 -

**damages** and **covered pollution cost or expense** in any one **accident**.

* * *

**5.** The Limit of Insurance for this coverage may not be added to the limits for the same or similar coverage applying to other **autos** insured by this policy to determine the amount of coverage available for any one **accident** or **covered pollution cost or expense**, regardless of the number of:

> **a.** Covered **autos**;
>
> **b. Insureds**;
>
> **c.** Premiums paid;
>
> **d.** Claims made or **suits** brought;
>
> **e.** Persons injured; or
>
> **f.** Vehicles involved in the **accident**." (Bold in original.)

¶ 34        Owners argued that section II.C. constituted an unambiguous antistacking provision that cleared up any arguable ambiguity in the declarations and should be enforced as written. In particular, subsection 5 explicitly stated that the limits for the same or similar coverage applying to other vehicles could not be added to determine the amount of coverage for an accident.

¶ 35        In their response, the Kuhns argued that the antistacking provision was ambiguous because the term "Limit of Insurance" was undefined and subject to different interpretations. Specifically, the "Limit of Insurance" section stated that the limits of coverage set forth in the declarations would be the most Owners would pay. The Kuhns contended that Item Two and Item Three stated a different "Limit of Insurance" without saying which controls, rendering the antistacking provision ambiguous.

¶ 36                              D. The Trial Court's Decision

¶ 37          In August 2021, the trial court conducted a hearing on the motions and took the matter under advisement. In August 2022, the court issued a 73-page written order analyzing the parties' arguments and dozens of cases addressing when stacking is permitted or when an antistacking clause bars stacking. Ultimately, the court concluded that (1) Illinois case law weighed heavily in favor of finding the policy ambiguous and (2) stacking was permitted in this case because the declarations listed the limit of insurance multiple times, specifically, once for each vehicle. Accordingly, the court entered summary judgment in favor of the Kuhns and ruled that the limit of insurance Owners was required to pay was $7 million.

¶ 38          This appeal followed.

¶ 39                                      II. ANALYSIS

¶ 40          Owners appeals, arguing the trial court erred by concluding that (1) the antistacking clause was ambiguous and (2) stacking of the policy's coverage limits was permitted. We agree, reverse the trial court's judgment, and remand with directions.

¶ 41                    A. The Applicable Law and the Standard of Review

¶ 42                              1. *The Standard of Review*

¶ 43          "The filing of cross-motions for summary judgment constitutes an implicit agreement between the parties that there are no genuine issues of material fact and only a question of law is presented to the court." *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 30, 183 N.E.3d 47. A reviewing court reviews the entry of summary judgment in favor of a party *de novo*. *Id.* Similarly, construction of an insurance policy presents a question of law that an appellate court reviews *de novo*. *Id.*

¶ 44                              2. *Construction of the Policy*

- 14 -

¶ 45    The Illinois Supreme Court recently described the law governing the interpretation of insurance policies in the context of "stacking" in *Hess v. Estate of Klamm*, 2020 IL 124649, ¶¶ 15-16, 161 N.E.3d 183, in which it wrote the following:

> "Under Illinois law, 'the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies.' *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561 (2005). The 'primary objective' in interpreting an insurance policy 'is to ascertain and give effect to the intention of the parties, as expressed in the policy language.' *Id.* Unambiguous policy language is applied as written unless it conflicts with public policy. *Id.*

> In general, antistacking provisions in insurance policies are not contrary to public policy. *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 229-30 (1995). Thus, an unambiguous antistacking clause will be given effect by a reviewing court. *Hobbs*, 214 Ill. 2d at 18. If the clause is ambiguous, however, it will be construed liberally in favor of coverage and strictly against the insurer who drafted the policy. *Id.* at 17. Policy language is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.* Only reasonable constructions of the language will be considered, not 'creative possibilities' suggested by the parties. See *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993) ('Reasonableness is the key.'). Moreover, we ' "will not strain to find ambiguity in an insurance policy where none exists." ' "

¶ 46    When an antistacking clause refers to the limit of coverage in the declarations page, the formatting of the declarations page becomes important in determining whether the policy

language is susceptible to more than one reasonable interpretation. *Kovach v. Nationwide General Insurance Co.*, 475 F. Supp. 3d 890, 897 (C.D. Ill. 2020) (citing *Hess*, 2020 IL 124649, ¶¶ 22, 24). The Illinois Supreme Court has repeatedly stated that "it would not be difficult to find an ambiguity arising from a declarations page that lists the liability limits separately for each covered vehicle." *Hess*, 2020 IL 124649, ¶ 22 (citing *Hobbs*, 214 Ill. 2d at 21, and *Bruder*, 156 Ill. 2d at 192). "In the absence of other qualifying language in the antistacking clause, '[t]here would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two [vehicles].' " *Hobbs*, 214 Ill. 2d at 25 (quoting *Bruder*, 156 Ill. 2d at 192). Based on this wording, some appellate courts have found certain multivehicle policies with antistacking clauses were nonetheless ambiguous because the declarations pages listed a separate premium and limit of liability for each vehicle. See, *e.g.*, *Cherry v. Elephant Insurance Co.*, 2018 IL App (5th) 170072, ¶¶ 20-22.

¶ 47 However, the Illinois Supreme Court has made clear that its suggestion that listing the limits of coverage multiple times in the declarations may create an ambiguity "should not be construed as 'establishing a *per se* rule that an insurance policy will be deemed ambiguous as to the limits of liability anytime the limits are noted more than once on the declarations.' " *Hess*, 2020 IL 124649, ¶ 22 (quoting *Hobbs*, 214 Ill. 2d at 26 n.1). "Rather, the question should be decided on a case-by-case basis. [Citation.] Moreover, the declarations page should not be read in isolation but must be construed together with the other provisions in the policy." *Id.*

¶ 48 B. This Case

¶ 49 In this case, the "Limit of Insurance" provisions refer back to the declarations to define the policy limits ("We will pay damages *** up to the Limit of Insurance shown in the Declarations for this coverage."). Item Three of the declarations lists each vehicle covered by the

policy, seven in all, and lists (1) the type of coverage provided, (2) the limits of that coverage, and (3) the premium paid for that coverage. Because this information is provided for each vehicle, the declarations pages state seven separate times that the "combined liability" limit on each vehicle is $1 million for each accident.

¶ 50     The Kuhns argue that the declarations' listing the limit of insurance for each vehicle is enough to render the policy ambiguous and to permit stacking. The Kuhns also argue that (1) the "Limit of Insurance" provisions refer the reader back to the declarations pages to determine the limits but (2) because the provisions do not specify whether the insured should look at Item Two or Item Three, the provisions are ambiguous.

¶ 51     Reading the policy as a whole and interpreting its plain language, we conclude that (1) the declarations are consistent, not ambiguous, and (2) the antistacking clause set forth in the policy clarifies any possible ambiguity.

¶ 52                              1. *The Declarations Pages*

¶ 53     Because the "Limit of Insurance" provisions (1) refer to the declarations pages and (2) the declarations pages list the limit of insurance for each vehicle, the policy could arguably be viewed as ambiguous under *Hess*. However, we agree with the district court's decision in *Kovach*, a factually similar case that analyzed the declarations and antistacking provisions of an auto policy very similar to those at issue in this case and concluded the antistacking provisions applied.

¶ 54     In *Kovach*, the policy at issue covered four scheduled vehicles, and in the declarations pages, the policy listed for each vehicle the applicable coverages, limits of liability, and premium amounts for those coverages. *Kovach*, 475 F. Supp. 3d at 893-95. Although the coverage limits were the same, the types of coverages, and the premiums therefor, varied based on the insured vehicle. *Id.*

- 17 -

¶ 55 The federal district court carefully examined the Illinois Supreme Court's decision in *Hess* and noted that "the decision hinged on if there was a reasonable way to read the policy as allowing stacking." *Id.* at 897. (The supreme court in *Hess* wrote, "Although the liability limits are technically listed twice [in the declarations], we find this does not create an ambiguity with respect to stacking." *Hess*, 2020 IL 124649, ¶ 24.) The district court in *Kovach* explained that the *Hess* court "found that it was persuasive that the defendant had needed multiple pages to list the vehicles which that policy covered." *Kovach*, 475 F. Supp. 3d at 897 (citing *Hess*, 2020 IL 124649, ¶ 24). Based on this reasoning, the district court concluded that defendants in stacking cases "need to have a reasonable justification to list their liability limits multiple times in the declarations." *Id.*

¶ 56 The district court agreed with the insurer in that case that the insurer was justified in stating coverages and liability limits for each vehicle insured because the coverages varied from vehicle to vehicle. *Id.* "It seems reasonable for a company to desire to lay out in detail what exactly is happening with each vehicle when coverages vary." *Id.*

¶ 57 In this case, Owners similarly needed multiple pages because (1) it was insuring seven different vehicles (four trailers and three semitrucks) and (2) the types of coverages and premiums for those coverages varied based on each vehicle. The following page of the declarations concretely demonstrates the point.

OWNERS INS. CO.

58979 (10-16)
Issued 12-06-2018

AGENCY PRINS INSURANCE INC
07-0677-00 MKT TERR 038

Company Bill

**POLICY NUMBER** **51-829-065-00**
Company Use 39-04-IA-1806

NAMED INSURED JASON FARRELL

Term 06-22-2018 to 06-22-2019

| | TERRITORY | CLASS |
|---|---|---|
| 1. 2000 KW W900 VIN: 1XKWDB9X9YR861487 | 048 Clinton County, IA | |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million each accident | $1,805.81 | |
| Uninsured Motorist | $ 100,000 each person/$ 100,000 each accident | 9.24 | |
| Underinsured Motorist | $ 100,000 each person/$ 100,000 each accident | 17.77 | |
| Medical Payments | $ 5,000 each person | 13.09 | |
| Comprehensive | ACV - $2,500 deductible | 440.60 | |
| Collision | ACV - $2,500 deductible | 1,644.17 | |
| Terrorism Coverage | | 19.65 | |
| | TOTAL | $3,950.33 | |
| | | | No Charge |

Interested Parties:
Lienholder: MAQUOKETA STATE BANK, 203 N MAIN ST, MAQUOKETA, IA 52060-2204

Additional Endorsements For This Item: 58329 (10-16)   58330 (10-16)   58402 (05-16)

ITEM DETAILS: Extra heavy truck-tractor operated within a 300 mile radius.
USE CLASS (00753): Truckers - Miscellaneous.
Commercial Auto Plus Coverage Package applies.
Vehicle Count Factor Applies.
A 5% seat belt credit has been applied to BI and/or Med Pay premium.
Diminished Value Coverage applies.

160   0103278 A 1184

| | TERRITORY | CLASS |
|---|---|---|
| 2. 1999 PTRB 379 VIN: 1XP5D69X0XN466052 | 048 Clinton County, IA | |

| COVERAGES | LIMITS | PREMIUM | CHANGE |
|---|---|---|---|
| Combined Liability | $1Million each accident | $1,805.81 | |
| Uninsured Motorist | $ 100,000 each person/$ 100,000 each accident | 9.24 | |
| Underinsured Motorist | $ 100,000 each person/$ 100,000 each accident | 17.77 | |
| Medical Payments | $ 5,000 each person | 13.09 | |
| Terrorism Coverage | | 9.23 | |
| | TOTAL | $1,855.14 | |
| | | | No Charge |

Interested Parties: None

Additional Endorsements For This Item: 58329 (10-16)   58330 (10-16)   58402 (05-16)

ITEM DETAILS: Extra heavy truck-tractor operated within a 300 mile radius.
USE CLASS (00753): Truckers - Miscellaneous.
Vehicle Count Factor Applies.
A 5% seat belt credit has been applied to BI and/or Med Pay premium.

160   0104995 A 1184

¶ 58        Based on the level of detail provided in setting forth the coverages, limits, and premiums for each vehicle, Owners clearly needed to provide information over multiple pages. Similarly, the coverages varied based on the vehicle insured; for example, the premiums for vehicle 1 and vehicle 2 (both semitrucks) were identical for liability, UIM/UM coverage, and medical

payments, but only vehicle 1 had comprehensive and collision coverage.

¶ 59 The "Limit of Insurance" language provides, "When combined liability limits are shown in the Declarations, the limit shown for each accident is the total amount of the coverage and the most we will pay for damages *** in any one accident." The antistacking provisions refer the insured specifically to "the limit shown for each accident." Regardless of whether the insured looks to Item Two or Item Three to determine the limit of coverage, the same answer is reached.

¶ 60 The table shown in Item Two shows the following:

| COVERAGES | COVERED AUTOS SYMBOL | LIMIT OF INSURANCE FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| Combined Liability | 7, 8, 9, 19 | $1 Million each accident | $6,311.69 |

Clearly, based on Item Two, the "Limit of Insurance" listed in the declarations is "$1 Million each accident" for all scheduled vehicles. Importantly, the term "Limit of Insurance" appears only once in the declarations: in Item Two.

¶ 61 Item Three also leads to the same conclusion. Item Three provides for each vehicle the types of coverage provided, the limits of those coverages, and the premiums for such coverages for that vehicle. Every scheduled vehicle in policy had combined liability coverage with a limit of "$1 Million each accident" listed next to the premium therefor. That is, every single item contained in Item Three (1) has combined liability coverage, (2) a premium listed for that coverage, and (3) a limit of $1 million each accident. Given that the antistacking provisions limit coverage to "the limit shown for each accident," an insured looking for the "Limit of Insurance" in Item Three would likewise conclude that the limit was "$1 Million each accident," the same as provided by Item Two. We agree with *Kovach* that "the Limit of [Insurance] clause in this case is much clearer if each individual limit listed as [Combined Liability] is indeed the maximum [Owners] would pay for each [accident]." *Kovach*, 475 F. Supp. 3d at 898. Because the "Limit of Insurance" clause

directs the insured to the limit in the declarations for "each accident," we conclude that the policy is unambiguous.

¶ 62    Moreover, the premiums listed for combined liability coverage for each item in Item Three add up to a total of $6311.69, which is the same as the premium amount listed in Item Two for the same coverage. The same is true relating to the other types of coverages and premiums. Further, the total estimated premium is the same in Item Two as it is in Item Three. Accordingly, no insured could believe that he was paying separate premiums for combined liability to be stacked. Instead, the insured would recognize that Item Two and Item Three convey the same information in different ways and each premium under each vehicle was providing combined liability coverage of "$1 Million each accident," just as the declarations provide.

¶ 63    Item Three "does nothing more than indicate the amount of liability coverage provided for each owned vehicle and the premium allotted for that coverage. To the extent that this schedule could create some confusion about whether the liability coverage could be stacked, the 'Limit of Insurance' provision," specifically subsection II.C.5. prohibiting the adding of limits, clarifies that question. *West Bend Mutual Insurance Co. v. Vaughan's Fetch, Inc.*, 2022 IL App (5th) 210168-U, ¶ 27; see also *Pekin Insurance Co. v. Estate of Ritter*, 322 Ill. App. 3d 1004, 1005, 750 N.E.2d 1285, 1286 (2001).

¶ 64                    2. *The Antistacking Clause*

¶ 65    Even if some ambiguity existed, the policy's antistacking clause clears up any possible confusion. In *Hobbs*, the supreme court stated that listing a limit of liability for each vehicle could lead to an ambiguity "*[i]n the absence of other qualifying language in the antistacking clause.*" (Emphasis added.) *Hobbs*, 214 Ill. 2d at 25. The Prudential Property and Casualty Insurance Company policy at issue in *Hobbs* had an antistacking clause that provided,

" 'This limit of coverage applies regardless of the number of *** insured cars *** or cars involved in the accident or loss. Coverages on other cars insured by us cannot be added to or stacked on the coverage of the particular car involved.' " *Id.* at 28. The supreme court rejected arguments similar to the ones the Kuhns make here and concluded that the "antistacking clause will be enforced as written." *Id.* at 31. The court noted, "We will not *** torture ordinary words until they confess to ambiguity." (Internal quotation marks omitted.) *Id.*

¶ 66      Not only does this policy contain the "traditional" antistacking provision described in *Hess*, *Hobbs*, and *Bruder* in subsection C.1., defining "combined liability," it also has an *explicit* antistacking clause. Subsection C.5. provides as follows:

> "**5.** The Limit of Insurance for this coverage may not be added to the limits for the same or similar coverage applying to other **autos** insured by this policy to determine the amount of coverage available for any one **accident** or **covered pollution cost or expense**, regardless of the number of:
>
> **a.** Covered **autos**;
>
> **b. Insureds**;
>
> **c.** Premiums paid;
>
> **d.** Claims made or **suits** brought;
>
> **e.** Persons injured; or
>
> **f.** Vehicles involved in the **accident**." (Bold in original.)

¶ 67      We conclude that the explicit antistacking clause contained in section II.C.5. of the policy, like the antistacking clause in *Hobbs*, is unambiguous and should be enforced as written. We agree with Judge Easterbrook, who wrote, "[An antistacking clause's] function is to say that

*even if* some other clause suggests the possibility of stacking, that is not what the policy means. It is a disambiguator. To see ambiguity in the policy is to learn why the anti-stacking clause was included." (Emphasis in original.) *Grinnell Select Insurance Co. v. Baker*, 362 F.3d 1005, 1007 (7th Cir. 2004).

¶ 68        The Kuhns also argue that the antistacking provisions themselves are ambiguous because terms like "Limit of Insurance" and "combined liability limits" are not defined. We disagree. The structure of section II of the policy, and the fact that subsection C is titled "Limit of Insurance," clearly demonstrates that the "definition" of "Limit of Insurance" is contained within the provisions that follow. That is, all of subsection C "defines" what is meant by "Limit of Insurance."

¶ 69        Similarly, subsection C.1. defines what is meant by "combined liability" as that term is used in the declarations. And because subsection C is a structurally a part of section II— the section of the policy that provides the terms of "Covered Autos Liability Coverage"—the meaning of the term "coverage" as used in subsection C is controlled by the other provisions in that section, particularly subsection A.

¶ 70        Other sections of the policy specifically deal with (1) property damage coverage and (2) UM/UIM coverage, and those sections contain their own antistacking clauses for those specific types of coverage. We conclude that the antistacking provisions are not ambiguous on their face or when read together with the other provisions of the policy and the declarations.

¶ 71        In sum, we agree with the observation from Owners in its brief that "[h]ere, instead of applying the Policy's clear anti-stacking provision, the trial court engaged in the very sort of tortured and strained reading of the Policy to find an ambiguity that this Court and the Illinois Supreme Court have repeatedly rejected. This was error." Accordingly, we reverse the judgment

of the trial court and remand with directions for it to enter summary judgment in favor of Owners, declaring the "Limit of Insurance" for combined liability under the applicable policy is $1 million.

¶ 72                               III. CONCLUSION

¶ 73          For the reasons stated, we reverse the trial court's order granting the Kuhns' motion for summary judgment and remand with directions to enter summary judgment in favor of Owners.

¶ 74          Reversed and remanded with directions.

***Kuhn v. Owners Insurance Co.***, **2023 IL App (4th) 220827**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 19-MR-643; the Hon. Scott Kording, Judge, presiding. |

| | |
|---|---|
| **Attorneys for Appellant:** | Krysta K. Gumbiner, of Dinsmore & Shohl LLP, of Chicago, Kathryn W. Bayer, of Dinsmore & Shohl LLP, of Cincinnati, Ohio, and Conor B. Dugan (*pro hac vice*) and Ashley L. Yuill (*pro hac vice*), of Warner Norcross and Judd LLP, of Grand Rapids, Michigan, for appellant. |

| | |
|---|---|
| **Attorneys for Appellee:** | K. Lindsay Rakers, of Sumner Law Group LLC, of St. Louis, Missouri, for appellees Mark Kuhn and Karen Kuhn. |
| | Chase T. Molchin, of Ginzkey Law Office, of Bloomington, for appellees Kathleen Crabtree, Jessica O'Brien, Montinique Howard, Haley Willan, Grace Storm, Abby Hoeft, Olivia Reed, and Joriana Bischoff. |
| | Terence B. Kelly, of Kraft, Wood & Kelly LLC, of Bloomington, for appellee Steven B. Price. |
| | No brief filed for other appellees. |